<pre>
 1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEBRASKA
 2

 3   UNITED STATES OF AMERICA,     )    Case No. 4:23CR3019
                                   )
 4             Plaintiff,          )
                                   )
 5   vs.                           )
                                   )
 6   ANTHONY UNOCIC,               )
                                   )    Lincoln, Nebraska
 7             Defendant.          )    September 22, 2023

 8

 9
                       TRANSCRIPT OF PROCEEDINGS
10          BEFORE THE HONORABLE JOHN M. GERRARD
               SENIOR UNITED STATES DISTRICT JUDGE
11

12                    A-P-P-E-A-R-A-N-C-E-S

13   FOR THE PLAINTIFF:        Mr. Daniel D. Packard
                               Ms. Danielle Fliam
14                             U.S. Attorney's Office
                               100 Centennial Mall North
15                             Suite 487
                               Lincoln, NE 68508-3865
16

17   FOR THE DEFENDANT:        Mr. Korey L. Reiman
                               Federal Public Defender's Office
18                             100 Centennial Mall North
                               112 Federal Building
19                             Lincoln, NE 68508

20
     COURT REPORTER:           Ms. Lisa Grimminger, RDR, CRR, CRC
21                             100 Centennial Mall North
                               Room 587
22                             Lincoln, NE 68508
                               (402) 437-1908
23

24
     Proceedings recorded by mechanical stenography, transcript
25   produced with computer.
</pre>

 1        (At 3:31 p.m. on September 22, 2023; with counsel present;

 2    WITHOUT the defendant:)

 3        THE COURT:  This is United States of America versus

 4    Anthony Unocic.  How does he pronounce it?  Is it Unocic?

 5        MR. REIMAN:  Yes.

 6        THE COURT:  Yeah.  Anthony Unocic.  This is Case

 7    Number 4:23CR3019.  It comes on today.  This is the 22nd of

 8    September.  Excuse me.  We had a brief informal pretrial

 9    conference to handle some matters as far as stipulations and

10    opening statements and time limits, et cetera, and now we're

11    going to handle the matters that need to be taken up on the

12    record as far as motions in limine and some preliminary

13    instruction matters.

14        So, counsel, would you please enter your appearance.

15        MR. PACKARD:  Dan Packard and Danielle Fliam for the

16    government.

17        MR. REIMAN:  Korey Reiman for Mr. Unocic.

18        THE COURT:  All right.  Mr. Unocic is not here

19    because these are preliminary motions.  It's a Friday

20    afternoon.  Mr. Unocic will be here Monday morning when we

21    begin trial.

22        I do want to note on the record -- well, let's just take

23    it up now so we don't forget it.  The government has already

24    indicated that it will be requesting a motion to sequester

25    witnesses, and Mr. Reiman has indicated he would want that

1    motion to be reciprocal, and I will grant that motion.  So,

2    both parties, you know who you're calling as witnesses, so

3    you'll need to patrol the courtroom to make sure that the

4    witnesses are sequestered, but I will grant the joint motion to

5    sequester.

6        It is not anticipated that a *Missouri v. Frye* hearing will

7    be held.  There were no formal plea agreements that were

8    offered.  I'll ask Mr. Unocic that on Monday morning, but it's

9    the Court's understanding that there were no formal plea

10    agreements offered so none were either tendered or rejected.

11        All right.  Now let's take up the matter of preliminary

12    jury instructions.  Initially I had supplied the preliminary

13    jury instructions to counsel a few weeks ago when this case was

14    initially going to be tried, and I've submitted them again

15    today.  At the very bottom of page 2, the last full paragraph

16    that's at the bottom of page 2 and the top of page 3, it's in

17    blue right now.  It won't be when it's officially on the

18    record.  But that is the elements of the offense.

19        And the Court is proposing that at least in the

20    preliminary jury instructions that what will be given is as

21    follows:  The government has charged Mr. Unocic with

22    threatening to assault a federal law enforcement officer,

23    period.  This will require the government to prove beyond a

24    reasonable doubt that between on or about January 1 of 2022,

25    and on or about April 12 of 2022, Mr. Unocic made a threat to

1    assault a federal law enforcement officer, comma, that

2    Mr. Unocic was aware others could regard his statement as

3    threatening violence, comma, and that Mr. Unocic made the

4    threat with the intent to retaliate against the federal law

5    enforcement officer on account of his performance of his

6    official duties.

7         And so that is the elements charge, at least

8    preliminarily, that I'm giving to the jury.  I asked at the

9    informal conference if there was any objection to the

10   preliminary jury instructions.  The government did not have an

11   objection, but Mr. Reiman did on behalf of Mr. Unocic, and I

12   want you to be able to state that for the record, please.

13        MR. REIMAN:  Your Honor, consistent -- I'd previously

14   filed some proposed instructions, and consistent with those --

15   I would submit that consistent with the *Counterman* opinion,

16   *Counterman vs. Colorado*, that the preliminary instructions

17   should include that Mr. Unocic consciously disregarded a

18   substantial risk that his communication would be viewed by

19   Agent Tubbs as threatening violence.

20        And I would note there's probably some disagreement about

21   "by Agent Tubbs or others," but it's my position that it should

22   be by Agent Tubbs, that the defendant intended or ignored a

23   substantial risk that Agent Tubbs would view that as

24   threatening violence.  So I would ask that the preliminary

25   instruction be modified consistent with that proposed

1    instruction.

2            THE COURT:  Okay.  I might meet you partway there.

3            MR. REIMAN:  Okay.

4            THE COURT:  Let me tell -- I'm going to think out

5    loud here with my clerk that's here.  What I am utilizing and

6    what I'm likely to utilize in the final jury instructions --

7        Actually, Shayna, I'm going to have you print out before

8    we leave today the proposed final jury instruction number 8,

9    which will have all the elements of the offense.

10        And what I'm proposing in the final jury instruction --

11   and it's taken from the federal jury instructions, the Modern

12   Federal Jury Instructions, Criminal 14.02, and it takes into

13   account *Counterman* and all of the cases, but let me just tell

14   you what they have set forth and why I plan on instructing what

15   I have.

16        In cases that involve intent to impede or intimidate or

17   interfere, the rule does apply that there must be at least some

18   expectation that the threat would be communicated to that

19   official, okay, under those cases, but it is not required when

20   the defendant, as here, as in this case, is charged with the

21   intent to retaliate since that intention may exist regardless

22   of whether the subject is aware of the threat or not.

23        And I'm citing to -- and I'll have it in the instructions,

24   but I'll give you the cases that I'm looking at, and I'm citing

25   *The United States vs. Nguyen*, which is an Eighth Circuit case.

1  I'm also citing to the Modern Federal Jury Instructions,

2  Criminal 14.02.  I'm going to give you all of this in my

3  proposed instructions.  And I'm relying on *Nguyen*, and *Nguyen*

4  explained that while a threat made with the intent to impede,

5  intimidate, or interfere may require evidence that the expected

6  threat would be communicated to the official, the same is not

7  true in intent to retaliate cases.

8      Okay.  But *Nguyen*'s a little bit different than this case.

9  I'm relying upon *Nguyen* as well as the Federal Modern Jury

10  Instructions, and I'm aware there's a couple of district court

11  cases that went the other way, that went your way, Mr. Reiman.

12  I'm more persuaded by the Modern Federal Jury Instruction that

13  there is a difference between impede, intimidate, or interfere

14  versus retaliate, you know.  One requires the officer know.

15  The other one doesn't.  But with relation to *Counterman*, the

16  second element would be that Mr. Unocic either knew or intended

17  that others would regard his statements as threatening violence

18  or recklessly disregarded substantial risk that others could

19  regard his statement as threatening violence.  That's the

20  subjective test, and that's under *Counterman*.

21      I'm thinking, Shayna, we should probably have that in the

22  preliminary, don't you?

23          LAW CLERK:  Okay.  Yeah.

24          THE COURT:  Yeah.  So the *Counterman* subjective

25  portion of it would go into the preliminary jury instruction,

1    but what would not go into the preliminary or the final is that

2    Tubbs needed to know.  In other words, it's the listener's

3    intent; so those that were in jail and heard him and

4    testifying -- now, you are free to argue, and I'm going to give

5    you that opportunity.  That argument is available to you in

6    defense.

7             MR. REIMAN:  Okay.

8             THE COURT:  I'm not going to prohibit you from

9    arguing that, that, you know, he was either blowing -- or

10   arguing or blowing smoke or whatever, but he wasn't serious.

11   That wasn't his intent.  And of course I'm going to give the

12   government an opportunity to let the witnesses testify that

13   this is also what he said, you know, this is what he was

14   telling us, and yeah, I think he was serious.  But, I mean,

15   that's a fair argument.  That's what the case is about, okay,

16   so I am going to let you argue that, but I will not be

17   instructing that Tubbs had to know.  Okay?  And so it's

18   those -- for those very reasons.

19        And so what I would like you to do, Shayna, is let's give

20   Instruction Number 7, which is a description of the charge,

21   what he's actually charged with.  Okay.  Instruction Number 8

22   is the elements instruction, and Instruction Number 9, Threats,

23   Defined.  Instruction Number 10, Law Enforcement Officer,

24   Defined.  So if we could give them those instructions.

25        All right.  And we'll give you those before you leave.

 1    So, I mean, that's the heart and the nuts of the case.  So the

 2    government will know what it needs to prove, you know what you

 3    have to defend against, and I'm going to let you make your --

 4    you've made your argument now.  I'm going to let you make it at

 5    the instruction conference.  I mean, it's a fair debate.  It's

 6    a fair argument whether or not Tubbs had to know or not.  I

 7    don't think he does under the retaliation, but if I'm wrong,

 8    the Eighth Circuit will tell me that, and we'll do this one

 9    again.  Okay?  But I just want you to know why I'm doing what

10    I'm doing.

11         Okay.  All right.  So I will make that change as to

12    paragraph 3.  I'm going to include the second element, the

13    *Counterman* element essentially so...okay.  All right.  So

14    that's it on the preliminary jury instructions.  And I'll get

15    those to you hopefully yet today before we leave.

16         Okay.  Are you all going to be here for just a little bit

17    if we -- I mean, we'll get you both those instructions and the

18    instructions I just talked about, Numbers 7 through 10, so you

19    know the nuts of it.

20         Okay.  All right.  Now let's go to the motions in limine.

21    I think I've ruled on some of them but not all of them, and

22    let's just take them in order.

23         So the first one I had was from the government.  It was

24    filing number 44, and the first two are character evidence and

25    prior -- the government wants to exclude from trial any and all

1    testimony or evidence or argument regarding character evidence

2    or prior bad acts of government witnesses Tracy Hoops, Ryan

3    Rivera, and David Scroggins unless offered in accordance with

4    the Federal Rules of Evidence.  Okay.  And number two, the

5    alleged facts and circumstances underlying Tracy Hoops' pending

6    criminal cases, including but not limited to, and then it's the

7    April 22 arrest for possession of a firearm and the April 4

8    arrest for Laramie County.

9         I'll just tell you straight up, you know, prior bad acts

10   are not admissible under 608, but convictions are admissible

11   under 609, also if there's anything else as far -- that would

12   go to truthfulness, but I don't see anything here that does,

13   that would be admissible also.

14        But I guess I want to know what we're -- I don't want to

15   enter a motion -- I'm going to tell you I'm going to follow the

16   rules of evidence.  So some of the acts of Hoops, Rivera, and

17   Scroggins, if they're prior convictions, are going to come in,

18   okay, but the prior bad acts are not going to come in, but I

19   don't know what maybe Mr. Reiman will try to get in.  You know,

20   sometimes we talk about these and there's nothing to argue

21   about because they're not offering anything anyway but -- so

22   both of you tell me what you're talking about before I know

23   whether I need to enter a motion in limine.

24        MR. PACKARD:  Sure.  Judge, I acknowledge that my

25   motion basically says, "Please follow the rules of evidence."

1    I'm not -- you know, there's not something out here that I

2    think is going to happen.  I think knowing in advance will

3    allow me to sort of make a decision and let Mr. Hoops know if,

4    for example, something that he's not yet been convicted of is

5    fair game, if I can.  That was the motive behind this.

6        You announced two arrests.  Well, it goes into the next

7    page.  There's more arrests so...just so you know, there's more

8    stuff.  I think he has four total cases pending, and I expect

9    that if -- I expect that he's going to -- I'm going to ask, "Do

10   you have pending charges?"  He's going to be in a jumpsuit

11   here.  And then I'm not going to ask him about the underlying

12   facts.  I think if Mr. Reiman asks him about facts that

13   underlie his pending cases, he would say what he's charged

14   with, but he wouldn't get into the facts that underlie those.

15       And if he's allowed to go further, then Mr. Hoops would

16   then assert his Fifth Amendment right, and I'm trying to save

17   the time of us going through that unless we all know in advance

18   there's something probative of truthfulness that we're going to

19   go into, and that was the reason that I filed paragraphs 1 and

20   2, because Hoops does have pending cases.

21           THE COURT:  Yeah.  And, well, the other thing is, I

22   mean, if there's -- but, I mean, maybe the two of you know.  I

23   don't.  If there were any promises that have been made for his

24   testimony, you know, that's fair game also but --

25           MR. PACKARD:  Right, and I'm going to ask him about

1   that.  And there's no cooperation agreement, but I'm sure he's

2   expecting that this will look favorably on any outcome he has

3   in any of his cases, and I'm going to ask him that.  "What are

4   you expecting out of this?"  And I know what I'd like him to

5   say.  I can't say -- I'm not sure exactly how he'll say that,

6   but I think that he would admit that, yeah, I hope some judge

7   somewhere will consider that I participated in this.  So I

8   think that's fair game.  Just the facts that underlie it, I

9   don't.

10          THE COURT:  I think that's fair game, and I think

11  it's fair game for Mr. Reiman to say let's talk about that.

12          MR. REIMAN:  And I think he's looking at a number of

13  years in prison, I think it's fair to say, from a number of

14  these different prosecutions.  I think it was Hoops that

15  actually did reach out initially and try to get -- he did try

16  to get some -- wasn't it Hoops that reached -- or was it Rivera

17  whose attorney reached out and tried to get the U.S. Attorney

18  or somebody on board to give him a cooperation deal, and they

19  said no?

20          MR. PACKARD:  There was never any cooperation.  It

21  was just, "Look, this guy's going to do this," so he tells his

22  lawyer, and the lawyer, I'm sure, thinking that it would be

23  beneficial to client, put things in motion that led to an

24  interview.  So I'm not so naive to say that there wasn't a

25  motive there, but it wasn't --

1          THE COURT:  Let me just say this.  And it's not going

2     to be unusual to any type of cooperation case or anything.  I

3     don't want to get into any underlying facts or anything, but it

4     is fair for the prosecution to say -- and it's also fair for

5     you to get into, okay, I was charged with this, this, and this,

6     okay, and I could be facing 40 years or whatever.  And, you

7     know, were you made any promises?  To which he'll probably say

8     no.

9          But, you know, were you working with the prosecution?

10     Were you attempting -- I mean, do you expect something out of

11     this?  You know, that's fair for both you to ask, Dan, and fair

12     for you to go into, Korey, but not the underlying -- you know,

13     in other words, what were you charged with?  You know, there's

14     some potential penalties here, and are you expecting to get

15     something out of it?  And he'll say whatever he's going to say.

16          MR. REIMAN:  Okay.

17          THE COURT:  Is that fair?  So I mean that's -- so I

18     am going to deny the government's motion in limine with that

19     understanding.  Okay?  So I will sustain it to the extent that

20     the underlying facts of what is being charged is not to be

21     inquired into by either the government or the defense.  Okay.

22     So underlying facts of what support the charge.  But what is

23     being charged, what the potential penalties might be, what the

24     expectations may be of favor or non-favor, that is all fair

25     game for impeachment.

1        Okay.  I think that handles, does it not, Mr. Packard,

2    numbers 1 and 2?

3            MR. PACKARD:  It handles it.  Thank you.

4            THE COURT:  Yeah.  And paragraph number 3, yes,

5    potential punishment and any collateral consequences, I don't

6    allow.  I anticipate you're not going to get into that,

7    Mr. Reiman.  That would be of the defendant's potential

8    punishment and collateral consequences.  In fact, I'll

9    specifically --

10            MR. REIMAN:  Oh, yeah.  As it relates to Mr. Unocic?

11            THE COURT:  Yes.

12            MR. REIMAN:  Okay.

13            THE COURT:  Yeah.  In fact, I will specifically

14    instruct the jury that I'm the one that sentences and you're

15    not to consider that at all.  Okay?  So to the extent -- I'll

16    sustain that.

17        Okay.  Then number 4.  Again, the government's asking me

18    to follow the rules of hearsay, which I will, but I do

19    understand what -- what's being argued is that unless somebody

20    calls -- in other words, there are three witnesses that said I

21    heard this, this, and this, and there are other ones that

22    potentially didn't hear anything.  Okay?  And what the

23    government is asking is you can't argue about that -- or you

24    can't say that unless you bring them in to say, you know, I was

25    in jail with him for three months, and I didn't hear anything.

1          MR. PACKARD:  Right.  I'm moving in limine to prevent

2     any questions about non-testifying inmates.  And I'll just be

3     up front.  Scroggins isn't going to testify.  It's going to be

4     Hoops and Rivera.  Those are the only two that are inmates that

5     are going to testify.  So questions about what others -- any

6     other inmate said I would move in limine to exclude unless we

7     approach and, you know, there's some discussion about how it

8     might be relevant, and I have outlined the argument in my

9     brief.

10          THE COURT:  Yeah.  And, Mr. Reiman, anything?

11          MR. REIMAN:  I think the agents interviewed five or

12    six witnesses.  I think three had heard something, three

13    hadn't.  I think it's a fair question to ask the agent, "You

14    interviewed a number of inmates out at that jail that day,

15    didn't you?"

16          THE COURT:  And --

17          MR. REIMAN:  That seems fair.

18          THE COURT:  That -- without anything further, that is

19    a fair question.

20          MR. REIMAN:  Okay.

21          THE COURT:  Okay?  And you'd be asking the agent.  I

22    mean, you're not -- so we've got Inmates Hoops and Rivera that

23    would be -- obviously it doesn't make any difference what they

24    know -- you're going to be asking them what they knew as far

25    as -- there's nothing that they can say about why the other

1    inmates didn't testify or anything, but you'd be asking the

2    agents, okay, you interviewed six people or seven people, and

3    we've got two of them here.

4              MR. REIMAN:  Yes.

5              THE COURT:  Okay.  That's fair.  Okay?  So to that

6    extent the -- I guess the government's motion would be

7    sustained in part and overruled in part with that

8    understanding.

9         Okay.  All right.  I think that is -- I believe that's it

10   from filing number 44, is it not?

11             MR. PACKARD:  That's it, Judge, on filing 44.

12             THE COURT:  Okay.  Then the -- what do I have on 44?

13   Then we've got the defendant's motion in limine, which is

14   filing number 48.  Let's take those in reverse order.  The

15   second -- I've already written on that.

16             MR. REIMAN:  You have.

17             THE COURT:  And so the underlying -- from the

18   April 2015 arrest of Unocic, any evidence about drugs or

19   paraphernalia or any of that doesn't come in.

20        I don't know what paragraph number 1 is.  You have to --

21             MR. REIMAN:  So I think it was Hoops claims in his

22   statement that as Mr. Unocic was telling -- sharing his story

23   and what he was, you know, going to do to this agent, he was

24   also bragging about some of his prior past.  One of the things

25   he indicated, that when he was young, he brought a gun to

1    school and was going to blow all those kids away, and

2    intertwined with that he said something about he was committed

3    to a mental institution when he was younger also.

4        So obviously that's pretty prejudicial and has no

5    relevance to this case, or whatever relevance there is, is

6    greatly outweighed.  So I would ask that we not get into

7    anything about school shootings or his mental health commitment

8    back when he was a child that he relayed to -- it was Hoops, I

9    believe.

10            MR. PACKARD:  No objection.  That's fine.  I don't --

11            THE COURT:  You're not planning on getting --

12            MR. PACKARD:  No.  I think the only thing that I --

13            THE COURT:  You should instruct Hoop- -- I mean,

14    because you may have questions, and it may come -- if there's

15    an objection, I would sustain it right away, but if you can --

16    when you're talking with Hoops in preparation for his

17    testimony, the school shooting or mental health commitment or

18    whatever is not -- I mean, I know you're not going to ask him

19    about it, but he's not --

20            MR. PACKARD:  I've talked to him about it, and I've

21    told him not to volunteer it.  I just don't want it to be a

22    basis for a mistrial if it comes out.  I mean, we can't predict

23    that, but I'm just saying.

24            THE COURT:  But at least I know what -- I can stop it

25    right away.

1      MR. PACKARD:  Yeah.  And I'm not going to ask him

2   about it, and I'm pretty sure I've told him not to talk about

3   it so....

4      THE COURT:  Okay.  Fair enough.  But I understand

5   we're not dealing with nuns and priests here so...but at least

6   I'm watching.  At least I know what I'm watching for, then.  So

7   I will sustain the motion, and I'll watch -- I'll anticipate

8   that it's not going to occur, but I'll watch for it.

9      MR. REIMAN:  There was one other thing that's kind of

10   connected to this drug type of stuff that the Court's already

11   ruled on that I should have brought up, but Mr. Unocic -- I

12   guess pursuant to Uno's statement -- Mr. Unocic's statement to

13   Hoops and Rivera, he was making this suppressor from this

14   solvent trap, and he tells them that the suppressor was for

15   Uncle Charlie, who he says is also his drug dealer.

16    So I understand that if the Uncle Charlie part of that

17   comes in, but I am asking that they not get into that was

18   Mr. Unocic -- Uncle Charlie was Mr. Unocic's drug dealer.

19      THE COURT:  Okay.

20      MR. PACKARD:  And again, I've talked -- we've talked

21   with Mr. Hoops about that.  The drug evidence is not admissible

22   and it shouldn't be volunteered but --

23      THE COURT:  Yeah.  Okay.  But --

24      MR. PACKARD:  You know, I don't plan on asking about

25   Uncle Charlie.  I would ask him --

1    THE COURT:  But that's good to know, though.  If I

2  hear "Uncle Charlie," my ears will perk up, and we'll get to

3  another topic.

4    MR. PACKARD:  And I'm not sure if it's Charlie or

5  Rico or what it is.

6    MR. REIMAN:  Somebody's uncle.

7    MR. PACKARD:  It might be Uncle Rico.  You said Rico

8  before.  I don't remember.

9    MR. REIMAN:  I think it's Charlie.

10    THE COURT:  If I hear Uncle Somebody, I'll be

11  listening.  All right.  Fair enough.

12    MR. PACKARD:  But he will talk about the suppressor

13  part of it.

14    THE COURT:  Oh, yeah.

15    MR. PACKARD:  So...okay.

16    THE COURT:  No.  That's fair.  I mean what -- I

17  understand the defendant's concern, you know, the suppressor

18  and why he was doing it, et cetera, but if it had to do for

19  protection of drugs or his drug involvement or something, we

20  would stop it at that.

21    All right.  So I think as to filing number 48 -- and my

22  ruling on that was basically contained in filing number 50.  So

23  I think that covers 48, does it not, Korey?

24    MR. REIMAN:  Yes.

25    THE COURT:  All right.  Then I believe there was

1    filing number 56.  Is that right?  The next one would be

2    defendant's objection, and I think some of this, if not all of

3    it, may be moot now.  I mean, I know I haven't gone through in

4    detail the government's exhibits, but I think some of -- a

5    bunch of the updated Exhibit 11 removes the issues underlined,

6    do they not?  Or if not, you tell me.

7            MR. REIMAN:  Okay.  So are you guys going with what

8    you emailed me?

9            THE COURT:  Wait just a second.  What, now?

10       (Discussion off the record.)

11           THE COURT:  Well, let me talk about two of them that

12   are still at issue, I think.

13           MR. REIMAN:  Okay.

14           THE COURT:  You wanted to prohibit the length of the

15   sentences and the -- let's see what else -- oh, and the

16   supervised release conditions that were on there.  And I will

17   say this.  I allow convictions to come -- you know, the

18   certified copies of the convictions to come in, and the length

19   of the sentences are normally on there, and that's -- the

20   Eighth Circuit allows that under *Crenshaw* and *Shelledy* and --

21           MR. REIMAN:  But those come in as part of

22   impeachment.  These aren't coming in under that rule would be

23   my rebuttal to that.  Yes, when somebody's impeached with a

24   prior criminal conviction, they get to get into the sentence

25   and all of that, but that's not -- we're not using that for

1   this purpose here.  The only reason these are coming in is

2   because it's intertwined to explain....

3            THE COURT:  What the underlying offense is.

4            MR. REIMAN:  Right.  So I would submit this is apples

5   and oranges about how much we're going to let in about this,

6   and I don't think it's the jury's -- I don't see the relevance

7   of the jury knowing how long he got on that sentence and

8   especially the supervised release.  That thing is replete

9   with --

10           THE COURT:  I agree with the --

11           MR. REIMAN:  Okay.

12           THE COURT:  The supervised release I'm not

13   intending...the conditions of supervised release are -- if

14   they're relevant at all, they're outweighed by prejudicial

15   effect.  So I'm just talking about the length of sentence.  I'm

16   not sure that you need that from the government's sake.

17           MR. REIMAN:  And also I believe in Exhibit 1,

18   Exhibit 1 has a list of the forfeiture counts with all this

19   list of ammunition and guns that they found in his place.  I

20   would submit under 403 that's more prejudicial than any insight

21   that it gives; so I would ask that that be excluded as well.

22           THE COURT:  All right.  I'll hear from the

23   government.  Let me pull....

24           MS. FLIAM:  Judge, as it pertains to Exhibit 1, I

25   don't object if pages 10 through 15 are removed.

1        THE COURT:  Just a second.  I'm at Exhibit 1.  All

2   right.

3        MS. FLIAM:  If pages 10 through 15 are pulled from

4   that exhibit, I think -- the terms of supervised release, I

5   don't think those are duplicated anywhere else in that exhibit,

6   but Mr. Reiman can correct me if I'm wrong.

7        MR. REIMAN:  I don't believe so.

8        MS. FLIAM:  Okay.

9        THE COURT:  Let's go off the record for a moment.

10   (Discussion off the record.)

11        THE COURT:  Let's go back on the record.

12   So as to filing number 56, let me just restate it.  It's

13   primarily objections to Exhibit Number 1 and Exhibit Number 11.

14   So let's take Exhibit Number 1, first of all.  And whether it's

15   stated in the written motion or not, there were two things that

16   were primarily objected to.  One is to the terms of supervised

17   release, and the government has indicated that they will not be

18   offering the terms of supervised release.  I will sustain that

19   motion in limine; so pages 10 through 15 of Exhibit 1 will not

20   be offered.

21   What the government is planning on offering are pages 1

22   through 5 of the indictment, which is the indictment itself and

23   which does include the forfeiture notice at pages 2 and 3, and

24   I believe the defendant is objecting to the items contained in

25   the forfeiture notice.

1           MR. REIMAN:  Yes, sir.

2           THE COURT:  All right.  And I think based on 403 --

3           MR. REIMAN:  Yes, sir.

4           THE COURT:  -- primarily?

5           MR. REIMAN:  Yes.

6           THE COURT:  Okay.  And the Court will overrule that.

7    It is part and parcel of the underlying -- it's actually

8    intertwined with this particular offense itself as far as --

9    when I say it's intertwined with this particular offense, the

10   question is:  What is he mad about?  What is he retaliating

11   against?  I think that is relevant to that and is not -- the

12   probative value is not outweighed by the prejudicial value.  So

13   all of the indictment will come in.  So that's pages 1 through

14   5 of the certified conviction.

15       Then pages 6 and 7 of Exhibit 1 are not being offered.

16       Danielle, stay with -- okay.  So pages 6 and 7 are not

17   being offered.

18           MS. FLIAM:  That's correct.

19           THE COURT:  All right.  And then page 8 and 9, which

20   is the judgment, and that's all part of the certified record,

21   pages 8 and 9 is being offered by the government.  The defense

22   has objected to the length of the imprisonment, the term of the

23   imprisonment, and I am going to sustain that objection.  So on

24   page 9 where it says "imprisonment," it will read, "The

25   defendant is hereby committed to the custody of the United

1    States Bureau of Prisons to be imprisoned," all right, and the

2    words "for a term of 33 months" will be redacted.  It's my

3    understanding he was actually sentenced to that 33-month

4    sentence after this incident occurred anyway.  Is that correct?

5              MR. REIMAN:  Yes.

6              THE COURT:  All right.  So that is Exhibit 1.  Is

7    that clear?  So pages 1 through 5 will come in, and that's the

8    indictment, and pages 8 and 9 will come in with the exception

9    of the "for a term of 33 months" will be redacted.  Any

10   provisions on supervised release, pages 10 through 15, are not

11   coming in.  All right.  So that's my ruling on Exhibit 1.

12        Exhibit 11 is a one-page certified copy of the conviction.

13   I want to make sure the date of the conviction is correct.  I'm

14   talking about the conviction of January 27, 2017; correct?

15             MS. FLIAM:  Yes.

16             THE COURT:  All right.  And there was an objection,

17   and I'll let you state the objection, Mr. Reiman.

18             MR. REIMAN:  Your Honor, this page includes

19   discussion about the restitution that's owed.  So again I think

20   we're getting into the facts of that Colorado case, which I

21   believe, pursuant to the Court's previous order, we weren't

22   going to get into that.  It also has in here that he obviously

23   didn't make bond 'cause he was getting 641 days for time

24   served, but it also says Department of Corrections, three

25   years, so it has the specific sentence that he's getting.  So I

1     would object to the part that demonstrates the actual sentence

2     received.

3                    THE COURT:  All right.  And I will overrule that

4     objection.  Again, under *United States vs. Shelledy* as well as

5     *United States vs. Crenshaw*, the sentence imposed on a prior

6     conviction, basically the Eighth Circuit considers it part of

7     the nature of the offense.  It's not a specific detail

8     regarding the crime.  So I'm going to let Exhibit 11 stand as

9     is, and the objection is overruled.

10        Okay.  Now let me go back.  I think that was it as to

11    filing number 56.

12                   MR. REIMAN:  Yes, sir.

13                   THE COURT:  Okay.  Are there any other motions in

14    limine that we need to take up from the government?

15                   MR. PACKARD:  If I could have just a second here.  In

16    the pretrial brief I think I made a -- had a section on

17    personal information of witnesses.  They were just concern- --

18    well, the government would move in limine to prohibit questions

19    that call for personally identifying information, and if

20    Mr. Reiman feels like he wants to ask about that, I would just

21    ask permission that we approach rather than have the answer be

22    given on the record in front of the defendant.

23                   THE COURT:  Okay.

24                   MR. PACKARD:  I don't expect it to be a problem.

25    I've talked with Mr. Reiman about it.  I just wanted to move in

1    limine because there's been some concerns that have been raised

2    by the government witnesses.

3              THE COURT:  Anything further, Mr. Reiman?

4              MR. REIMAN:  No plan to get anywhere close to that,

5    and if that changes, I'll ask to approach.

6              THE COURT:  All right.  So the motion in limine will

7    be sustained as to personal identifying information.  If for

8    some reason that comes up or is necessary during the course of

9    trial, counsel can both ask to approach, and we will -- I do

10   not anticipate that it would -- or that it would be necessary,

11   but if so, you would approach before getting into that area.

12   Okay?

13             MR. REIMAN:  Yes, sir.

14             THE COURT:  Anything else from the government?

15             MR. PACKARD:  I wanted to give you a heads-up as far

16   as a cautionary instruction on the explosives conviction.  So

17   the government's plan is to have, on Monday afternoon, a

18   records custodian from Scottsbluff.  Witness two will be David

19   Tubbs, and he's the alleged victim, and it was my plan to offer

20   those convictions through his testimony.  So he'll talk a

21   little bit about his background and how he got involved and

22   then talk about how -- you know, I'll show him that evidence

23   and how that informed his investigation, specifically that the

24   prior conviction -- it's Exhibit 11.  And so, you know, as far

25   as the jury being told, you know, you can consider this for

1    limited purposes, I'll try to -- I mean, you'll -- I think

2    you'll know when I'm getting into that.

3        So I guess I'm just telling you, Judge, I feel like that

4    might be an appropriate time Monday afternoon when Tubbs is

5    testifying to tell them you can consider this for limited

6    purposes, and then I don't -- I don't know that it'll come up

7    again.  I don't think there's any other witnesses that we're

8    going to bring that conviction up.

9            THE COURT:  You're talking about Exhibit 11?

10           MR. PACKARD:  That's right.

11           THE COURT:  And that's fair, and I've got a limiting

12   instruction.  I'll be ready to go.  So I'll watch for that on

13   Monday afternoon.  As far as Exhibit Number 1, sometimes -- and

14   I'll give it if you want.  That's up to the defendant, a

15   limiting instruction, you know.  Basically it's intertwined

16   with this particular offense, Exhibit Number 1, but I can give

17   a limiting instruction that you're to consider it just for the

18   conviction as it was and not to convict for any other

19   purpose -- or not to consider it for any other purpose.  But

20   sometimes defense lawyers want it, sometimes you don't.  So you

21   can think about it.  You don't even have to tell me yet.

22           MR. REIMAN:  Okay.

23           THE COURT:  So think about --

24           MR. REIMAN:  Okay.

25           THE COURT:  You can just tell me on Monday.  I'll

1    have a limiting instruction.  I will give it as to Exhibit

2    Number 11.  I'll plan on that Monday afternoon.  I will also

3    give it as to Exhibit Number 1 when that comes in, but only if

4    you want it.

5            MR. REIMAN:  Okay.

6            THE COURT:  Okay.  All right.  I'll get you the

7    instructions, then.  Anything else that we need?

8            MR. PACKARD:  No, Your Honor.

9            THE COURT:  Nothing else from the government.

10    From you, Mr. Reiman?

11            MR. REIMAN:  No.

12            THE COURT:  All right.  If not, thank you.  Good luck

13    in your preparation, and we'll see you Monday morning.  So

14    let's plan on -- normally I meet with you at -- let's still

15    plan on meeting at 8:30 in my chambers.  I think we've handled

16    almost anything we need to handle, but if there's any

17    last-minute matters, what I do, then, is meet with the jury as

18    far as orientation for about 15 minutes.  I'll do that at,

19    like, quarter to nine, and so -- and you won't be in here

20    during that time.  You can finish up with witnesses or

21    whatever.  And then shortly after nine we'll start with --

22    well, first of all, we'll bring in Mr. Unocic and handle two

23    very brief matters beforehand as far as the *Missouri v. Frye*,

24    et cetera, and then we'll bring the jury in for voir dire.

25            Okay.  So let's plan on meeting at 8:30, but that

1    shouldn't take more than five minutes, if that.

2        Okay.  All right.  Good luck.  Thank you.  We stand

3    adjourned.

4        (Adjourned at 4:19 p.m.)

5

6                        * * * * * * * *

7

8        I certify that the foregoing is a correct transcript from

9    the record of proceedings in the above-entitled matter.

10

11

12        /s/Lisa G. Grimminger            February 6, 2024
          Lisa G. Grimminger, RDR, CRR, CRC   Date
13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          I-N-D-E-X

 2                                                        Ruled
     MOTIONS:                               Made          On
 3
     Joint motion to sequester witnesses      2            3
 4
     Plaintiff's motion in limine          Filing 44      12
 5
     Defendant's motion in limine          Filing 48      17
 6
     Defendant's objection to Exhibits 1 and 11  Filing 56 21,24
 7
     Plaintiff's motion in limine re: personal
 8     identifying information               24           25

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```