```
 1                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEBRASKA
 2

 3    UNITED STATES OF AMERICA,      )    Case No. 4:23CR3019
                                     )
 4              Plaintiff,           )
                                     )
 5    vs.                            )
                                     )
 6    ANTHONY UNOCIC,                )
                                     )    Lincoln, Nebraska
 7              Defendant.           )    September 27, 2023

 8

 9                              VOLUME III
                       TRANSCRIPT OF PROCEEDINGS
10              BEFORE THE HONORABLE JOHN M. GERRARD
                 SENIOR UNITED STATES DISTRICT JUDGE
11

12                      A-P-P-E-A-R-A-N-C-E-S

13    FOR THE PLAINTIFF:          Mr. Daniel D. Packard
                                  Ms. Danielle Fliam
14                                U.S. Attorney's Office
                                  100 Centennial Mall North
15                                Suite 487
                                  Lincoln, NE 68508-3865
16
      FOR THE DEFENDANT:          Mr. Korey L. Reiman
17                                Federal Public Defender's Office
                                  100 Centennial Mall North
18                                112 Federal Building
                                  Lincoln, NE 68508
19

20

21    COURT REPORTER:            Ms. Lisa Grimminger, RDR, CRR, CRC
                                  100 Centennial Mall North
22                                Room 587
                                  Lincoln, NE 68508
23                                (402) 437-1908

24

25    Proceedings recorded by mechanical stenography, transcript
      produced with computer.
```

1              (At 9:30 a.m. on September 27, 2023; with counsel for the

2       parties and the defendant present; WITHOUT the jury:)

3              THE COURT:  Good morning, everyone.  This is day

4       three of trial, United States of America versus Anthony Unocic,

5       Case Number 4:23CR3019.  All counsel are present.  Mr. Unocic

6       is present.

7          Counsel, do you need any more time with Mr. Unocic before

8       we have the formal instruction conference?

9              MR. REIMAN:  (Shakes head.)

10             THE COURT:  All right.  Comes now time for the formal

11      jury instruction conference.  The Court did provide the

12      proposed jury instructions to counsel after close yesterday

13      afternoon.  We had an informal jury instruction conference this

14      morning at 8:30 a.m.  A few changes were discussed and made,

15      and now it comes time for the formal instruction conference.

16         Counsel, are you ready to proceed?

17             MS. FLIAM:  Yes, Your Honor.

18             MR. REIMAN:  Yes.

19             THE COURT:  All right.  We'll take these -- we'll go

20      through the jury instructions and the verdict form one page at

21      a time.

22         So we are on Instruction Number 1: Introduction.  Is there

23      any objection to Instruction Number 1?

24             MS. FLIAM:  None from the government.

25             MR. REIMAN:  No, sir.

```
 1              THE COURT:  Instruction Number 2: Duty of Jury.  Any
 2    objection?
 3              MS. FLIAM:  No.
 4              MR. REIMAN:  No, sir.
 5              THE COURT:  Instruction Number 3: Evidence.
 6              MS. FLIAM:  No objection.
 7              THE COURT:  Is there any objection?
 8              MR. REIMAN:  No, sir.
 9              THE COURT:  Instruction Number 4: Exhibits.  Any
10    objection?
11              MS. FLIAM:  No.
12              MR. REIMAN:  No, sir.
13              THE COURT:  Instruction Number 5: Credibility of
14    Witnesses.  Any objection?
15              MS. FLIAM:  No.
16              MR. REIMAN:  No, sir.
17              THE COURT:  Instruction Number 6: Credibility of
18    Cooperating Witness.  Is there any objection?
19              MS. FLIAM:  No.
20              MR. REIMAN:  No, sir.
21              THE COURT:  Instruction Number 7: Statements by
22    Defendant.  Any objection?
23              MS. FLIAM:  No.
24              MR. REIMAN:  No, sir.
25              THE COURT:  Instruction Number 8, which is the
```

```
 1   statement of the indictment; the presumption of innocence;

 2   burden of proof.  Is there any objection?

 3              MS. FLIAM:  No.

 4              MR. REIMAN:  No, sir.

 5              THE COURT:  Instruction Number 9.  These are the

 6   elements of the charge, threatening to assault a federal law

 7   enforcement officer.  Is there any objection?

 8              MS. FLIAM:  No.

 9              MR. REIMAN:  Yes, sir.

10              THE COURT:  All right.  There are objections from the

11   defense, and I'll hear those objections now.

12              MR. REIMAN:  Your Honor, prior to trial I did file in

13   filing 36, my proposed jury instructions.  One of the proposals

14   I had was directly related to the elements of this case.  I

15   proposed specifically with element two that the defendant

16   consciously disregarded a substantial risk that his

17   communication would be viewed by Agent Tubbs as threatening

18   violence.

19         As the Court's aware, Counterman changed things, and that

20   is a recent case that came out this summer from the Supreme

21   Court.  The Court is relying on cases from the Eighth Circuit,

22   which I certainly understand, but that predated Counterman, and

23   I think Counterman changed things that when you look at the

24   definition of "reckless" -- well, the definition that is being

25   used is inconsistent with what the Court was trying to do in
```

1    *Counterman*.  It's my position that Mr. Unocic, when he said

2    those statements, had to have that reckless disregard as

3    directed -- it would cause fear in the actual target, Agent

4    Tubbs, not someone who just happened to be around.

5         So I will object based upon filing 36 that it should read

6    that the defendant consciously disregarded a substantial risk

7    that his communication would be viewed by Agent Tubbs as

8    threatening violence.

9              THE COURT:  All right.  And the Court will consider

10   that as an offer of an alternative instruction.

11        Okay.  And I'll hear from the government.

12             MS. FLIAM:  Your Honor, we would ask you to overrule

13   or, I guess, rest on this Instruction Number 9 as it's drafted.

14   The Court relied on two Eighth Circuit cases, *Wynn* and *Ivers*,

15   both which involve this same statute and both which involved

16   threats not made directly to the, quote, unquote, victim.

17   There is nothing in the statute itself that requires it to be

18   communicated to the victim.

19        And *Counterman* did change the intent element of it, but

20   *Counterman* itself talks about, "In the threats context,"

21   reckless "means that a speaker is aware 'that others...'" and

22   does not again specifically require communication to the

23   victim.

24        So for those reasons we believe that Instruction Number 9

25   as written is correct.

1          THE COURT:  All right.  Very well.  Well, the Court

2    will overrule the objection, and Instruction Number 9 will

3    stand as is.  This is going to take a little explaining on the

4    record so that the Eighth Circuit knows exactly what the Court

5    is doing, what the Court was considering.

6          As I've instructed in Number 9, there are four elements to

7    the crime, and I'm describing those elements in plain English,

8    hopefully.

9          The first element, number one, the defendant has to make a

10   true threat to assault Agent Tubbs.  In other words, this

11   cannot be words that are blowing smoke or blowing off steam but

12   a true threat.  And what *Counterman vs. Colorado* -- that was a

13   2023 case by the United States Supreme Court -- changed was the

14   subjective intent of the speaker, of the defendant in this

15   case.  In other words, the defendant must have a subjective

16   understanding of the statement's threatening nature, and the

17   First Amendment requires no more than demanding a showing of

18   recklessness, and that's why I have instructed as I have in

19   element number two.

20         Element number two states that "Mr. Unocic either knew or

21   intended that others would regard his communication as

22   threatening violence, or recklessly disregarded a substantial

23   risk that others could regard his statement as threatening

24   violence."  So there is the subjective element that *Counterman*

25   has placed in and I placed into the instructions.  The jury

1    must find that the defendant had a subjective intent.

2        But the U.S. Supreme Court went on in *Counterman* to state,

3    "A person acts recklessly...when he 'consciously disregards a

4    substantial [and unjustifiable] risk that the conduct will

5    cause harm to another,'" and that's meaning, in quotes, "a

6    speaker is aware 'that others could regard his statements as'

7    threatening violence and 'delivers them anyway.'"  The "others"

8    means the recipient of the statement.  It does not mean the

9    object, or Agent Tubbs as the case would be.

10       So there is a subjective test as to the speaker of the

11   words.  It's an objective test as to the listener, the receiver

12   of the words or the communication, and that's exactly how the

13   Court has instructed in this case.

14       As to element number three, at the time of the threat,

15   Tubbs was a law enforcement officer, and I've instructed on

16   that.  I don't think there's any serious dispute in this case

17   on that.

18       And instruction *[sic]* number four, "Mr. Unocic made the

19   threat with the intent to retaliate against Agent Tubbs on

20   account of the performance of his official duties."  And the

21   issue in this case, as it was in *Wynn*, as it was in *Ivers*, is

22   what is the mens rea that's required?  The defendant argues --

23   and the defendant was citing *United States vs. Fenton* -- that

24   the intent to retaliate can exist only when the speaker intends

25   that his threat be communicated to the special agent, to its

1    object, but that's not how I read the plain language of the

2    statute itself.  And more importantly, the Eighth Circuit has

3    spoken on this subject in both *United States vs. Wynn* and

4    *United States vs. Ivers*, and *Counterman* didn't change that.

5         So let's take a look at the statute itself, and I'm

6    reading from the statute.  "Whoever...threatens to assault...a

7    Federal law enforcement officer."  Okay.  And there's two

8    different ways that those threats can occur.  One would be with

9    the intent to impede, intimidate, or interfere with such law

10   enforcement officer while engaged in the performance of his

11   official duties, and that can call for an element that the

12   agent would have to know of the threat because it's impeding,

13   it's intimidating, or it's interfering with those duties.

14        Then the statute goes on in the disjunctive, "or with

15   intent to retaliate against such...law enforcement officer on

16   account of the performance of official duties."  And the Eighth

17   Circuit held very clearly, both in *Wynn* and then reaffirmed it

18   in *Ivers*, that we read into the statute only that mens rea

19   which is necessary to separate wrongful conduct from otherwise

20   innocent conduct.

21        And in *Wynn* the district court instructed the jury it must

22   find that Wynn made a threat to assault or murder an employee

23   with the intent to retaliate against such employee on account

24   of the performance of official duties, and Judge Loken wrote

25   that intent separated Wynn's wrongful conduct from innocent

1    conduct and that is the definition that is to be given, and

2    that was reaffirmed in *Ivers,* and *Ivers* went on to talk about

3    giving further definition to what a true threat was.

4         In *Ivers*, that was the case in which Judge Wright, a

5    district federal judge up in Minnesota, was threatened with

6    death, and actually the threat was made -- Ivers made the

7    threat to his two lawyers.  He was mad at Judge Wright on a

8    civil case, the dismissal of a summary judgment, and his rage

9    grew and continued to grow, and he didn't actually make a

10   threat until the latter part of his statements with the

11   lawyers, at which time he finally -- I mean, he was going on to

12   rant about the judge and everything the judge had done wrong,

13   and he concluded his statements by saying, "I was going to

14   throw some chairs, and you don't know the 50 different ways I

15   plan to kill her."

16        That was the only time he ever made a statement to his

17   lawyers at that point in time.  The judge didn't know anything

18   about it.  And his lawyers at that point in time said, "We've

19   got a problem," and went on to report it.  That's exactly what

20   occurred in *Wynn*.  The statements weren't made directly to the

21   person or the object, but the call receivers said, "We've got

22   an issue here.  This is a real threat.  We need to report it to

23   someone."  That's exactly what the facts are in this particular

24   case.

25        So the object of the threats does not need to know, and

1    the reasoning from the Circuit -- and I also relied on the

2    Modern Federal Jury Instructions -- makes sense.  Because the

3    first part of the statute, if the defendant threatens to

4    assault either an official or law enforcement officer with the

5    intent to impede, intimidate, or interfere with their duties,

6    that calls for a change in behavior.  They're trying to stop

7    them.  They're trying to change behavior.

8        The second part, "with intent to retaliate against such

9    official...or law enforcement officer," that is the mens rea

10   itself.  And you can retaliate in different ways.  I mean, you

11   can call them, you can write them -- in this case we're talking

12   about chirping them or whatever the case may be -- or you can

13   simply intend to do the harm, you know.  It produces what I

14   would call a *Tarasoff* reaction.  I mean, at some point somebody

15   threatens to do harm or to kill an individual, and the

16   recipient, the objective recipient of those threats says, "We

17   got to do something," okay, and the call is made.  And in this

18   case the call was made to -- Rivera made a call to his lawyer.

19       And the bottom line is if you threaten to assault or to

20   murder a law enforcement official with the intent to retaliate

21   against that official on account of the performance of his

22   official duties, that is sufficient mens rea in a case such as

23   that.  So that's why I have instructed as to element one.

24       Element two is the subjective basis that Mr. Unocic has to

25   have and what the jury must find.  The jury is going to have to

1    find that.

2         Three, at the time Mr. Unocic made the threat, Tubbs was a

3    federal law enforcement officer.

4         And four, Unocic made the threat with the intent to

5    retaliate against Agent Tubbs on account of the performance of

6    his official duties.  The government's going to have to prove

7    that.  I went on to define what "recklessly disregards" means,

8    what "to retaliate" means.

9         So those are -- the elements in Instruction Number 9 will

10   stand.

11        I'll say a couple words about Instruction Number 10

12   because it kind of goes on, it ties into Instruction Number 9.

13   In Instruction Number 10 I go on to define what a true threat

14   is, and that's based directly from the language of *United*

15   *States vs. Ivers*, from the 2020 case from the Eighth Circuit.

16   And I want to be clear that the defendant is going to be able

17   to argue -- I set forth the factors from *Ivers*.  When making

18   this determination you may consider, among other things: the

19   reaction of those who heard the threat; whether the threat was

20   conditional; whether the person who made the alleged threat

21   communicated it directly to the object of the threat.

22        In other words, was it communicated to the agent?  In this

23   case it wasn't, and I'm going to let the defense argue that all

24   day long, in other words, that it's one of the factors as to

25   whether this is a true threat.

1      Whether the speaker had a history of making threats

2  against the person purportedly threatened.  Again, both sides

3  can argue that, those are factors.

4      And whether the person receiving the communications had a

5  reason to believe that the speaker had a propensity to engage

6  in violence.  So that is the hearer, the receiver of the

7  statement or the communication.

8      So I have defined what true threat means.  That ties into

9  Instruction Number 9, so Instruction Number 9 will stand.

10      Are there any objections to Instruction Number 10?

11          MS. FLIAM:  No objection.

12          THE COURT:  From the defense?

13          MR. REIMAN:  Just since you brought it up, I didn't

14  know -- in filing 36, part two of that was the intent to

15  retaliate, and whether we fit that into Instruction 9 or give a

16  separate instruction, I am asking for that in my proposed

17  instruction consistent with the *Fenton* opinion, which he went

18  through great lengths and gave a great explanation to why he

19  got to where he was, Judge Brooks did.

20      "The Government must prove beyond a reasonable doubt that

21  Unocic intended that his threat be communicated to Agent Tubbs.

22  If the Government failed to prove Unocic intended his words be

23  communicated to Agent Tubbs, you must find him not guilty."

24      As the Court concluded, intent to retaliate within the

25  meaning of 115(a)(1)(B) can only exist when the speaker intends

1    that his threat be communicated to its object.  It is the

2    conveyance of the threat to the victim and the fear and

3    apprehension such communication carries with it which

4    constitutes the retaliation, which makes sense to me.

5        If that's not what the law is, it seems an odd result that

6    someone can be sitting in jail and say, "I'm going to blow that

7    son of a bitch up so he doesn't testify."  You're all good

8    then.  But if he says, "I'm going to blow that son of a bitch

9    up to get back for *[sic]* him for what he did to me," then all

10   of a sudden you're in violation of this law.  That just seems a

11   very odd line to draw, and in the end what we are doing -- what

12   the result here is that the government is prosecuting bad

13   thoughts that were voiced out loud.  Thank you.

14           THE COURT:  Okay.  And I understand your argument.

15   It is well taken, and it's from *United States vs. Fenton*, but

16   that is not the law in the Eighth Circuit, and I've stated what

17   the law is when it's with an intent to retaliate against such

18   official on account of his performance of official duties.  The

19   threat need not be communicated to the agent.  And it's a line

20   that was drawn, and it wasn't drawn by me.  It was drawn by

21   Congress, okay, and that's what the law is.

22       All right.  So the objection to Instruction Number 10 is

23   overruled.  It's noted and overruled.

24       All right.  Instruction Number 11.  Is there any objection

25   to the definition of the law enforcement officer?

```
 1              MS. FLIAM:  No.

 2              MR. REIMAN:  No, sir.

 3              THE COURT:  Instruction Number 12: Proof of Intent or

 4    Knowledge.  Any objection?

 5              MS. FLIAM:  No.

 6              MR. REIMAN:  No.

 7              THE COURT:  Instruction Number 13: Reasonable Doubt.

 8    Any objection?

 9              MS. FLIAM:  No.

10              MR. REIMAN:  No, sir.

11              THE COURT:  Instruction Number 14: Dates of Offense.

12    Any objection?

13              MS. FLIAM:  No.

14              MR. REIMAN:  No, sir.

15              THE COURT:  Instruction Number 15: Venue.  Any

16    objection?

17              MS. FLIAM:  No.

18              MR. REIMAN:  No, sir.

19              THE COURT:  Instruction Number 16: Election of

20    Foreperson and Rules for Deliberation.  Any objection?

21              MS. FLIAM:  No.

22              MR. REIMAN:  No, sir.

23              THE COURT:  And I will note at this point -- we'll go

24    to the verdict form in just a moment.  I think both counsel

25    know that I will read the instructions -- the first 15
```

1   instructions to the jury so they will have them.  Closing

2   arguments will occur, and then I'll read number instruction --

3   I'll read Instruction Number 16 right before they deliberate

4   so....

5       All right.  Now, as to the verdict form, any objection as

6   to the verdict form?

7               MS. FLIAM:  No.

8               MR. REIMAN:  No, sir.

9               THE COURT:  All right.  And are there any other --

10  we've already talked about the instructions that were tendered

11  by the defense.  Are there any other instructions that are

12  being tendered or offered this morning by the government?

13              MS. FLIAM:  There are not.

14              THE COURT:  Or by the defense?

15              MR. REIMAN:  No, sir.  Thank you.

16              THE COURT:  Okay.  Other than those that have been

17  noted.  All right.  Very well.  Then we will prepare for --

18  well, I'm going to need about ten or -- what do you need?

19              MR. REIMAN:  I've got to use the restroom.

20              THE COURT:  Let's take about 10 to 15 minutes.  We'll

21  plan on -- let's reconvene at five minutes after 10:00 for

22  closing arguments and instructions.

23      All right.  Thank you.  We are in recess.

24      (Recess taken at 9:50 a.m.)

25      (At 10:08 a.m. on September 27, 2023; with counsel for the

1    parties and the defendant present; WITHOUT the jury:)

2            THE COURT:  We're outside of the presence of the

3    jury.  It comes time now for final instructions and closing

4    arguments.  Counsel have anything to take up before we bring

5    the jury?

6            MS. FLIAM:  No, Your Honor.

7            MR. REIMAN:  No, sir.

8            THE COURT:  All right.  Very well.  Let's bring the

9    jury.

10        (Jury in at 10:09 a.m.)

11           THE COURT:  Welcome back, ladies and gentlemen of the

12   jury.  Comes now time for your final jury instructions that

13   I'll be giving to you as well as closing arguments.  I've

14   placed the instructions on your chair, as I have before, so you

15   can either read along with me or listen to the instructions.

16   This is United States versus Anthony Unocic, Final Jury

17   Instructions.

18        (The Court read Final Jury Instructions 1 through 15.)

19           THE COURT:  Instruction Number 16 I will read to you

20   at the conclusion of the closing arguments.

21        All right.  Counsel, are you prepared to proceed to

22   closing arguments?

23           MR. PACKARD:  Yes, Your Honor.

24           MR. REIMAN:  Yes, sir.

25           THE COURT:  All right.  Mr. Packard, you may do so

1    for the government, please.

2         (Closing arguments made by counsel.)

3              THE COURT:  Ladies and gentlemen, Instruction

4    Number 16.

5         (The Court read Final Jury Instruction 16.)

6              THE COURT:  Those are my instructions, dated this

7    27th day of September, 2023, submitted at 11:30 a.m. and signed

8    by me on this date.

9         Ladies and gentlemen, take these instructions as well as

10   the verdict form, and good luck in your deliberations.  Thank

11   you.

12        Juror Number 13, I'll see you back in chambers in just a

13   few moments.  Thank you.

14        (Jury out at 11:29 a.m.)

15             THE COURT:  You may be seated.

16        All right.  Counsel, just a couple of things to take up

17   before we break.  First of all, congratulations on a well-tried

18   case by both parties.  It was tried professionally.

19        Mr. Unocic, you were provided with an excellent defense in

20   this case.  The jury will determine what the verdict is given

21   the instructions and given the law.

22        Two things.  Number one, when Kathy comes back in, if you

23   would give her your cell phone or -- but both of you are in the

24   building so -- but I think cell phone or a way to get ahold of

25   you just in case there are any questions that the jury may have

1    during the course of deliberations or once there is a verdict.

2    So if you'll talk with Kathy to get her your contact

3    information or cell phones.

4        And secondly, if you would go through the exhibits just

5    briefly to make sure that Kathy has all of the exhibits and

6    that they will make their way back to the jury as quickly as

7    possible.

8        All right.  Are there any other questions or any other

9    matters that we need to take up before we break, either from

10   the government --

11            MR. PACKARD:  No, Your Honor.

12            THE COURT:  -- or from you, Mr. Reiman?

13            MR. REIMAN:  No, sir.  Thank you.

14            THE COURT:  All right.  Well done.  We will stand in

15   recess until we hear something further from the jury, either a

16   verdict or any questions that the jury may have.  We stand in

17   recess.

18        (Recess taken at 11:31 a.m.)

19        (At 11:40 a.m. on September 27, 2023; with only counsel

20   for the parties present; WITHOUT the jury:)

21            COURTROOM DEPUTY:  This case is United States of

22   America versus Anthony Unocic, Case Number 4:23CR3019.  The

23   following exhibits were offered and received into evidence by

24   the government.

25        Exhibit Numbers 1, 3, 4, 6, 7, 8A, 8B, 9B, 10B, 11, 17A1

1    through 17A30, 17A32 through 17A34.

2        Exhibits 2 and 17A31 were offered but not received as

3    evidence by the government.

4        No exhibits were offered or received into evidence by the

5    defendant.

6        Counsel for the government agree?

7            MR. PACKARD:  Yes.

8            COURTROOM DEPUTY:  Counsel for defendant agree?

9            MR. REIMAN:  Yes.

10            COURTROOM DEPUTY:  Okay.  Thank you.  We're done.

11        (Recess taken at 11:41 a.m.)

12        (At 2:00 p.m. on September 27, 2023; with counsel for the

13    parties and the defendant present; WITHOUT the jury:)

14            THE COURT:  We're back on the record.  It's 2 p.m. on

15    September 27.  We're outside of the presence of the jury.  The

16    Court did receive a request that reads as follows:

17        "Dear Judge Gerrard:  Is it possible to get the text of

18    the law that states what the definition is of a threat to a

19    federal law enforcement officer?  Thank you."

20        The answer to that basically is no, but I'm politely

21    telling them that the law you must apply in this case is

22    contained in the jury instructions that I gave to you -- that

23    is the law -- hyphen, in particular, Instructions Number 9 and

24    10 define what constitutes a threat.

25        Anything the government wishes to add?

1          MR. PACKARD:  No, Your Honor.

2          THE COURT:  Any objection to that?

3          MR. PACKARD:  No, Your Honor.

4          THE COURT:  Or from the defense?  Turn on your mike

5    if you're -- please.

6          MR. REIMAN:  I was thinking of including the

7    elements -- Number 8 as well, the elements instruction.

8          THE COURT:  Number 9.

9       Do you have my book, Kathy?  I thought 9 was the elements

10   instruction.

11         MR. REIMAN:  Nine is the -- I think 9 is the threats,

12   defined.

13         THE COURT:  I think 10 is, but let me turn...I'll

14   see.  I'll see, I'll see.  Nine is the elements instruction.

15   Ten is the threat, defined.

16         MR. REIMAN:  Oh.  I must have it wrong, then.  I'm

17   sorry.

18         THE COURT:  Yeah.  Number 8 is simply what the

19   indictment says.

20         MR. REIMAN:  Okay.  That's fine.  I must be looking

21   at an old copy.  Yeah, I'm good with that, the elements and the

22   description of the charge.  Yes.  I'm fine.

23         THE COURT:  There's a lot of questions they could ask

24   us.  This isn't one I'd be expecting, but that's all right

25   so...all right.  Very well.  I will get this to them right

```
1    away, and we will let you know when we have anything else come
2    up.  Okay.  Thank you.  We are adjourned now.
3            (Recess taken at 2:02 p.m.)
4            (At 4:55 p.m. on September 27, 2023; with counsel for the
5    parties and the defendant present; WITHOUT the jury:)
6            THE COURT:  We're on the record in United States of
7    America versus Anthony Unocic.  It's about five minutes till
8    5:00 on September 27.  I wanted to let the lawyers know two
9    things.  Number one, the jury left for today at 4:45.  They
10   have not reached a verdict.  Right before that they had a
11   question.  And I apologize, I didn't ask for any input, but the
12   question was, "Does unanimous mean a 12-0 vote?"  And my answer
13   was yes.
14       Okay.  Trusting there's no objection to that answer.  From
15   the government?
16           MR. PACKARD:  No objection.
17           MR. REIMAN:  No.
18           THE COURT:  Nor from the defense.  So at 8:45 they
19   will be back in the morning so...all right.  You'll obviously
20   both -- I've got sentencings and stuff in the afternoon.  We'll
21   see what happens in the morning, but you'll both be around the
22   building?
23           MR. REIMAN:  Yes, sir.
24           MS. FLIAM:  I have a sick kid, Judge, so I'm home in
25   the morning, but I'll be here in the --
```

1          THE COURT:  As long as somebody -- yeah.  But as long

2    as there's a representative from the government and defense.

3          So we are in recess and adjourned until tomorrow morning.

4    Thank you.

5          (Evening recess at 4:56 p.m.)

6

7                         *  *  *  *  *  *  *  *

8

9          I certify that the foregoing is a correct transcript from

10   the record of proceedings in the above-entitled matter.

11

12

13          /s/Lisa G. Grimminger              February 6, 2024
            Lisa G. Grimminger, RDR, CRR, CRC    Date
14

15

16

17

18

19

20

21

22

23

24

25